THE PEOPLE OF THE STATE OF NEW YORK ex rel. ANDREW SESSELMAN, Appellant, *v.* THEODORE A. BINGHAM, as Police Commissioner of the City of New York, Respondent.

NEW YORK (CITY OF) — REMOVAL OF POLICEMAN UPON CHARGE OF INSUBORDINATION — WHEN DETERMINATION AND ORDER OF REMOVAL MUST BE REVERSED. Where a member of the police department of the city of New York, who had been attached for several years to what is called the "Boiler Squad" in the department, whose duty it is to inspect and test steam boilers, and who had been transferred to patrol duty in another precinct, wrote and mailed a letter to an association of steam engineers, of which he was a member, giving an explanation of the reasons why he was transferred from the "Boiler Squad," that fact is insufficient to sustain a charge of insubordination upon which he was tried by the police commissioner and removed from the department, where the letter contains nothing that can fairly be construed as insubordination and it is not claimed that any of the facts stated in the letter were false, or falsely colored, that the policeman was actuated by any malice or intention to cast any reproach upon the department or any of his superiors in office, or that, in writing and mailing the letter, he violated any law or rule applicable to the police force.

*People ex rel. Sesselman* v. *Bingham*, 118 App. Div. 906, reversed.

(Argued May 24, 1907; decided June 14, 1907.)

Appeal from an order of the Appellate Division of the Supreme Court in the first judicial department, entered March 8, 1907, which dismissed a writ of certiorari and confirmed the proceedings of the defendant in dismissing the relator from the police force of the city of New York.

The facts, so far as material, are stated in the opinion.

*Jacob Rouss* and *Louis J. Grant* for appellant. The communication set forth in the specification, which was addressed by relator to the board of associated engineers, and which was made the basis of the charges herein, was privileged, and, therefore, the charges predicated upon this communication could not, as a matter of law, be maintained. (*Lobell Co.* v. *Houghton*, 116 N. Y. 521 ; *Van Wyck* v. *Aspinwall*, 17 N. Y. 190 ; *De Arnaud* v. *Ainesworth*, 5 L. R. A. 163 ; *Ginsberg* v. *U. S. Co.*, 68 App. Div. 141 ; *Trapp* v. *Du Bois*, 76 App. Div. 314.) The communications set forth in the specification, which was addressed to the board of associated engineers, of which, as before stated, relator had a legal right to be a member, is neither a reflection upon the police department nor a criticism of any of his superiors. (*People ex rel. Coyle* v. *Comrs.*, 143 N. Y. 352.) Relator is entitled to restoration as it is clearly shown that he was guilty of no offense. (*People ex rel.* v. *Board of Police*, 39 N. Y. 506.) The motion to dismiss the charges should have been granted as a matter of law because there was absolutely no evidence to sustain them. (*People ex rel. Keane* v. *Dooling*, 60 App. Div. 324 ; *People ex rel. Croker* v. *Sturgis*, 91 App. Div. 302.)

*William B. Ellison, Corporation Counsel* (*Theodore Connoly* and *Royal E. T. Riggs* of counsel), for respondent. The judgment of the police commissioner in determining what conduct is a breach of discipline and unbecoming an officer should not be disturbed by the court. (*People ex rel. Hart* v. *Fire Comrs.*, 82 N. Y. 350 ; *People ex rel. Masterson* v *French*, 110 N. Y. 499.)

O'BRIEN, J.   The relator was removed from . the police force of the city of New York upon written charges.   He had been a member of the force for nearly ten years, and no complaint had been made against him during that time.   In this proceeding he was charged with gross insubordination, breach of discipline, conduct unbecoming an officer, and conduct injurious to public peace and welfare.   The relator, prior to May 28, 1905, was attached to what is called the boiler squad in the police department, and from that time to September 11th · of the same year he was assigned to duty n the seventeenth police precinct and while so assigned, it is said that he was guilty of the charges above stated, for the reason that " he did make a certain written statement or certain statements to a certain body or certain bodies, to wit : The Board of Associated Engineers and in effect and to the effect the following, to wit:

"NEW YORK, *July* 3, 1905.
"BOARD OF ASSOCIATED ENGINEERS :

" GENTLEMEN.— By request of your honorable Board, I herewith state to you the reasons of my transfer from the Steam Boiler Squad to the Seventeenth Precinct on May 28, 1905.   On Saturday, May 6, 1905, I was ordered to Dreamland Park, Coney Island, to test two fire engines.   I got to the place at 9 : 30 A. M. and after considerable looking around I found the boilers had no water in same and no engineer present.

" At 9 : 55 A. M. I found the manager of Dreamland Park — Mr. Samuel Gumperts.   I asked him why he did not have the boilers ready, and he told me he would have them ready in a minute.   I replied that I could not wait, as I had other work to do, namely, to go to the police parade in the afternoon in uniform, and that I would have to postpone the test for some other day.   He instantly flew in a rage, calling me a lot of vile names, threatening me with assault, and that he would fix me, and that I would not test any more boilers ; also that he would see that I was transferred.   He also stated that I was one of them fly mugs that wear their tin under their

coats and that I was drunk, and he wrote a letter to the office stating that I was drunk and boisterous.

" Gentlemen, the above statement is the cause of my transfer from the Boiler Squad."

This letter or written statement was verified by the oath of the relator, and upon its face it appears to be an explanation of the reasons why the relator was transferred from the boiler squad to the seventeenth precinct on May 28, 1905. The relator had, for several years, been a member of the board to which this communication was addressed. It is not suggested that his membership in the board was contrary to any rule, or that in any sense it disqualified him from performing the duties of his position as a policeman. It is a fair inference from the communication that the board, of which he was a member, had some interest in the question why he was removed or transferred to the precinct referred to, since the removal might have been for reasons which would affect his standing or usefulness in that associated body. The charge of insubordination was based solely upon the relator's act in writing and sending this communication to the body to which it was addressed.

It will be seen that the communication, on its face, contains nothing that can fairly be construed as insubordination. It is not claimed that any of the facts stated in the writing or letter were falsely stated or colored. It is not claimed that the relator was actuated by any malice or intention to cast reproach upon the department or any of his superiors in office. It is not claimed that in writing and mailing it the relator violated any law or any rule applicable to the police force. It was simply a plain statement of the facts relating to his transfer from the boiler squad to the precinct, and just how that can be construed as insubordination or any misconduct whatever, so far as appears, it is quite impossible to conjecture. It follows that the written charge, upon which the relator was tried and removed from office, was insufficient to justify any proceedings against him of the nature disclosed by the record. In legal effect the relator has been removed from office

without being charged with any offense or misconduct that warranted such action. The determination of the police commissioner and the order appealed from must, therefore, be reversed, with costs, and the relator reinstated, with costs in both courts.

CULLEN, Ch. J., EDWARD T. BARTLETT, VANN, HISCOCK and CHASE, JJ., concur; HAIGHT, J., not voting.

Ordered accordingly.